No. 90-607

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

---

CITIZENS FIRST NATIONAL BANK OF WOLF POINT, A national banking corporation,

Plaintiff and Respondent,

-vs-

MOE MOTOR COMPANY, a partnership and A.R. MOE, a/k/a ARVID MOE, AND CURTIS MOE, a/k/a CURTIS W. MOE, partners, associated and in business under the common name and style of said company,

Defendants and Appellants.

---

APPEAL FROM:   District Court of the Fifteenth Judicial District,
               In and for the County of Roosevelt,
               The Honorable M. James Sorte, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Don M. Hayes and Rodney T. Hartman; Herndon, Hartman, Sweeney & Halverson, Billings, Montana.

        For Respondent:

                Charles W. Hingle and Stephen D. Bell; Dorsey and Whitney, Billings, Montana.

---

Submitted on briefs: April 18, 1991

Decided: June 4, 1991

FILED

JUN - 4 1991

Filed Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is an action to foreclose a loan. Defendants appeal a summary judgment granted to plaintiff bank by the District Court of the Fifteenth Judicial District, Roosevelt County. We affirm in all respects except that we remand as to the Kelly Moe contract.

The issue is whether the District Court erred in granting summary judgment in favor of the bank on its claims and on defendants' counterclaims.

Defendant Moe Motor Company (Moe Motor) is a Wolf Point, Montana, partnership owned by defendants Arvid Moe and Curtis Moe. The business sells and services farm implements and equipment. Moe Motor and Citizens First National Bank of Wolf Point (CFNB) had a thirty year debtor-creditor relationship.

From 1978 to 1985, Moe Motor's indebtedness to CFNB increased from $85,435 to $308,863, while its net worth declined from $435,233 to $192,729. On September 11, 1985, Arvid Moe on behalf of Moe Motor executed a promissory note and security agreement with CFNB in which $210,670.88 of promissory notes were refinanced into one note. The note was payable "on demand, but if no demand is made, then on February 11, 1986." The security agreement granted CFNB a secured interest in Moe Motor's inventory, machinery, accounts or other rights to payment, general intangibles, and all vehicles, machinery, equipment, and fixtures identified.

Moe Motor did not make payment on the note by February 11, 1986, but, instead, sought further financing from CFNB. CFNB asked for certain financial information in support of the request. Moe Motor eventually supplied some, but not all, of the financial information. In the meantime, in April 1986, Moe Motor obtained a $230,000 federal disaster loan from the Small Business Administration (SBA). Moe Motor paid $150,000 to CFNB, which voluntarily released $20,000 back to Moe Motor for operating expenses.

In August 1986, with written notice to Arvid Moe, CFNB placed a hold on Moe Motor's checking account. CFNB then made two set-offs against the account, in the amounts of $14,786.88 and $13,728.08, applying these amounts to Moe Motor's obligations to the bank. In October 1986, CFNB determined that Moe Motor had sold several pieces of secured equipment "out of trust," without reporting the sales or remitting proceeds to CFNB. In November 1986, CFNB wrote to Moe Motor debtors and instructed them to make payments directly to CFNB.

CFNB filed this action in December 1986, seeking to recover on the September 11, 1985, promissory note. The action was stayed while Moe Motor went through a Chapter 11 bankruptcy. After the bankruptcy was concluded, Moe Motor filed counterclaims against CFNB for breach of contract, tortious interference with third party contracts, tortious violation of the covenant of good faith and fair dealing, defamation, and actual or constructive fraud. Moe

3

Motor claims that CFNB "breached agreements and understandings which had existed for years between the parties;" unreasonably refused to make further loans to Moe Motor; and, in contacting Moe Motor customers, intentionally interfered with Moe Motor's contracts with those customers.

CFNB moved for summary judgment on its affirmative claims and on the claims of Moe Motor. The District Court granted summary judgment in favor of CFNB in the amount of $216,937.81 in prejudgment principal and interest, plus post-judgment interest and CFNB's costs and attorney fees.

Our standard of review is the same standard employed by the district court; that is, summary judgment is proper only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d 892, 894. All reasonable inferences that may be drawn from the offered proof are to be drawn in favor of the party opposing the motion for summary judgment. Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511.

CFNB's action to recover on the note signed by Arvid Moe on behalf of Moe Motor on September 11, 1985, is straightforward. It is undisputed that Moe Motor did not pay off the note by the due date of February 11, 1986. CFNB's claim would fail only if one of Moe Motor's counterclaims succeeds. Moe Motor's first counterclaim

4

is that CFNB breached the contract before it did by taking a set-off when the Moe Motor debt was not due and owing; by wrongfully setting off $14,786.88 due on a contract with Arvid Moe's son, Kelly; and by refusing to extend further credit to Moe Motor without solid business reasons.

According to the unambiguous terms of the written contract between the parties, the September 11 note was due and owing when CFNB set off Moe Motor's checking account. Prior notice of set-off is not required if the depositor's indebtedness is due and owing. FDIC v. First Mortgage Investors (E.D.Wis. 1980), 485 F.Supp. 445, 455; Northwestern Bank v. Estate of Coppedge (1986), 219 Mont. 473, 476, 713 P.2d 523, 526. Moe Motor's claim of an unwritten agreement for an extension of the due date is too vague and indefinite to be an enforceable contract.

Kelly Moe, son of Arvid Moe, purchased a used Kenworth truck from Moe Motor in 1983. Moe Motor assigned the Kelly Moe contract to CFNB and agreed to act as guarantor of Kelly Moe's obligations under the note. Kelly Moe defaulted on the note by failing to make payments and CFNB discovered that he had sold the truck without remitting the proceeds to CFNB. With notice to Moe Motor, CFNB set off Moe Motor's checking account in the amount of $14,786.88 to cover the Kelly Moe contract.

The guarantee signed by Arvid Moe on behalf of Moe Motor for the Kelly Moe contract stated that "I hereby guarantee the

5

collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein." Section 30-3-416(2), MCA, provides that

> "Collection guaranteed" or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor, but only after the holder has reduced his claim against the maker or acceptor to judgment and execution has been returned unsatisfied, or after the maker or acceptor has become insolvent or it is otherwise apparent that it is useless to proceed against him.

The guarantee signed by Arvid Moe was of the "collection guaranteed" type.

The record before us does not indicate that CFNB obtained a judgment against Kelly Moe before setting off funds from the checking account of guarantor Moe Motor. The District Court made no findings that Kelly Moe had become insolvent or that it was otherwise apparent that it was useless to proceed against him. We remand this case to the District Court for entry of the appropriate finding as to this issue. If no such finding is appropriate from the record before the court, the District Court shall reduce the amount of CFNB's judgment by the amount set off for the Kelly Moe contract. However, because at the time of the set-off, Moe Motor had defaulted on the September 11 note, no cause of action for wrongful set-off will lie.

Moe Motor contends that CFNB led it to believe that further financing would be provided. That contention is contradicted by Arvid Moe's own statements in the May 18, 1984, SBA disaster loan application:

> I feel we need this Loan to stay in business and survive this Ag crisis due to No moisture and low Farm and Ranch prices the last few years. The high interest rate and the buyers market to lower profit even less has truly hurt cash flow and Farm Business in general. We have received loans from Citizens 1st National Bank to keep going. However they cannot loan more and in order to keep the 9 families working and lower our payments and interest I feel we must have SBA loan.

Moreover, Moe Motor failed to provide all of the additional financial information CFNB had requested before granting another loan. Finally, CFNB had no obligation to extend further credit to Moe Motor. Montana Bank of Circle v. Meyers & Son (1989), 236 Mont. 236, 244, 769 P.2d 1208, 1213. We hold that CFNB did not breach the contract before Moe Motor did.

Another counterclaim was for tortious interference with third party contracts. Moe Motor claims that CFNB interfered with its third party contracts by writing to Moe Motor customers and instructing them to pay their Moe Motor debts directly to CFNB.

Under § 30-9-502, MCA, a secured party is entitled to notify an account debtor to make payment to the secured party, in the event of default. It is not disputed that CFNB was a secured party

7

under its contract with Moe Motor. We hold that CFNB was within its rights in writing to Moe Motor's debtors.

Moe Motor's counterclaim for breach of the covenant of good faith and fair dealing depends on the claim that it had a special relationship with CFNB, under the standards set forth in Story v. City of Bozeman (1990), 242 Mont. 436, 791 P.2d 767. Here, like in Lachenmaier v. First Bank Systems, Inc. (Mont. 1990), 803 P.2d 614, 47 St.Rep. 2244, and Mann Farms, Inc. v. Traders State Bank of Poplar (Mont. 1990), 801 P.2d 73, 47 St.Rep. 2094, the parties had a business relationship and every indication is that the contract was for a profit motivation. We hold that there was no special relationship between the parties.

Moe Motor also alleges that CFNB defamed it in the letters CFNB wrote to Moe Motor customers. Copies of these letters are attached to the deposition of Arvid Moe. The first letter provides notice that debts to Moe Motor are to be paid directly to CFNB, citing statutory authority. The letter states that on February 11, 1986, Moe Motor defaulted under its security agreement with CFNB by failing to pay the amounts due. It then allows the addressee an opportunity to correct CFNB's record of the balance due.

After that letter was written, CFNB learned that Arvid Moe had instructed customers to pay Moe Motor directly. A second letter from CFNB notified debtors that if payments were made to Moe

8

Motor, the debtor would be liable to CFNB for wrongful payment. It again offered to correct payment records.

The record indicates that the statements in CFNB's letters were true. Truth is a complete defense to a claim of defamation. Griffin v. Opinion Publishing Co. (1943), 114 Mont. 502, 507, 138 P.2d 580, 584. We hold that the District Court was correct in granting summary judgment to CFNB on the defamation counterclaim.

Moe Motor claimed actual or constructive fraud on the part of CFNB. This claim evidently arises from alleged representations by the president of CFNB to Arvid Moe that the February 11 due date on the note would not be enforced and that the note would only become due if the bank deemed itself insecure or if Moe Motor violated the agreement.

The claimed representations by CFNB's president conflict with Arvid Moe's statement to the SBA that CFNB could no longer extend credit to Moe Motor. Even if such representations were made, Arvid Moe admitted violating the agreement with CFNB by selling equipment out of trust. He also admitted failing to give the bank information requested before another loan would be extended. We hold that the claim for actual or constructive fraud fails due to Arvid Moe's own admissions.

In review, we conclude that summary judgment was proper on the claim of CFNB and on Moe Motor's counterclaims. The judgment of the District Court is affirmed except as to the amount set off from

Moe Motor's account for the Kelly Moe contract. The District Court shall make findings and, if necessary, amend the judgment as to that aspect. Each party shall bear its own costs and attorney fees on appeal.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

Justice William E. Hunt, Sr., dissenting.

I dissent. Once again, this Court takes it upon itself to determine material questions of fact, further eroding a litigant's right to a trial by jury.

Summary judgment should be granted only if no issues of material fact exist. Rule 56(c), M.R.Civ.P. All reasonable inferences must be drawn in favor of the party opposing the motion. Cereck v. Albertson's Inc., 195 Mont. 409, 411, 637 P.2d 509, 511 (1981). Although the majority gives lip service to these time-honored rules, it refuses to apply them in this case. Instead, it selects evidence that tends to demonstrate CFNB's view of the suit while ignoring those proffered by Moe Motors. In so doing, it places itself in the position of fact finder, a position that should be left to the jury.

The majority concludes that Moe Motors' claim of an unwritten agreement for an extension of the promissory note's due date is too vague and indefinite to be an enforceable contract. However, when the proof is viewed in the light most favorable to Moe Motors, it becomes apparent that material questions of fact exist regarding whether the parties engaged in an implied agreement to extend the due date of the note or whether CFNB, by its actions, waived the condition of payment by February 11, 1986.

If one looks at CFNB's actions after the February 11, 1986, due date passed, one cannot help but conclude that CFNB led Moe Motors to believe that it would not enforce the time provision of the promissory note. Rather than taking action to collect on the note after February 11, CFNB attempted, in the words of its president Michael Miller, "to work out a plan on it." CFNB had substantial contact with Moe Motors throughout May, June, July, and August 1986, during which CFNB sought financial information from the car dealer in its attempt to refinance. In April 1986, CFNB accepted a partial payment of $130,000, which reflected money from the SBA loan received by Moe Motors. It also accepted other payments of principal and interest in August and September 1986.

The payment of interest for a definite period of time may be sufficient consideration for a creditor's promise to extend the time for payment of a note. Hackin v. First Nat'l Bank of Arizona, 419 P.2d 529, 531 (Ariz. 1966). The debtor's promise to pay interest during the extension period may be implied from the circumstances. Hackin, 419 P.2d at 531. Here, we have a debtor who has alleged that an agreement for extension existed and who made periodic payments of principal and interest during the extension period. Certainly, these facts raise an issue regarding whether an agreement to extend actually existed.

Alternatively, the evidence raises a genuine issue of fact concerning whether CFNB waived the due date of the note. The receipt of a delayed partial payment of money due and owing may

12

operate as a waiver of any existing default. 3A A. Corbin, *Corbin on Contracts*, § 754, at 491-92 (1960). Because the facts here demonstrate that CFNB accepted payments after the due date without demanding remittance of the entire amount borrowed and because CFNB attempted to formulate a financing plan with Moe Motors, CFNB may very well have waived the default that occurred on February 11.

If CFNB waived or extended the due date, it was required to notify Moe Motors of its intent to collect the remaining sums due before it setoff funds from the car dealer's checking account. The right of setoff exists only if the borrower is in default. See Bottrell v. American Bank, 237 Mont. 1, 14, 773 P.2d 694, 702 (1989). There are genuine issues of material fact regarding whether Moe Motors was indeed in default.

If Moe Motors was not in default when the setoff occurred, the Bank may be liable for wrongful setoff for the amounts applied to both the Moe Motors' promissory note and the Kelly Moe debt. It may also be liable for bad faith, defamation, and tortious interference with the right to contract for notifying customers of Moe Motors of a purported default when a default either had not yet occurred or had been waived by CFNB.

We will never know, however, which party actually committed the first breach. Thanks to this Opinion, the parties will never have the opportunity to reveal the entire story and plead their

13

positions to what should be the only real finder of fact in this state, a jury.

I would reverse the District Court.

_____
Justice

I concur with the foregoing dissent of Justice Hunt.

_____
Justice