No. 97-084

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 85


ROBERT G. STEELE,

Plaintiff and Appellant,

v.

DANIEL B. McGREGOR, JOSEPH V. MARONICK,
and six unnamed members of the State Bar of Montana
in their individual capacities,

Defendants and Respondents.



APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey M. Sherlock, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Robert G. Steele, pro se, Missoula, Montana

For Respondents:

Paul D. Johnson, Assistant Attorney General,
Helena, Montana



Submitted on Briefs: June 19, 1997

Decided: April 14, 1998
Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1    Robert G. Steele (Steele) appeals from the order and judgment of the First Judicial District Court, Lewis and Clark County, dismissing his complaint brought under 42 U.S.C. § 1983 (§ 1983) for failure to state a claim upon which relief can be granted.  We affirm.

¶2    The dispositive issue on appeal is whether Joseph Maronick and Daniel McGregor are entitled to judicial or quasi-judicial immunity.

BACKGROUND

¶3    Steele's complaint alleges the following facts, which we accept as true for purposes of this opinion.  Steele is a certified public accountant (CPA) who has been licensed to practice that profession in Montana since 1970.  After Steele was denied admission to the State Bar of Montana (State Bar) in 1992, he co-founded an organization called "Montanans for Due Process" through which he is attempting to expose the purportedly corrupt practices of the State Bar.  Montanans for Due Process sponsored an initiative entitled "Access to Justice" which proposed to amend the Montana Constitution to eliminate attorney licensing requirements and allow any person to represent another person in civil and criminal court proceedings.

¶4    Steele further alleges that, in 1995, he represented Neville Log Homes (Log Homes) at a prehearing conference in a case involving unemployment insurance taxes before Montana Department of Labor and Industry (DOL) hearing examiner Bernadine E. Warren.  Shortly thereafter, Daniel McGregor (McGregor), a DOL attorney, sent a letter to the Montana Supreme Court's Commission on Unauthorized Practice of Law--with copies to Steele, the State Bar, and the Montana Supreme Court--advising of his concern that Steele was practicing law without a license.  McGregor also advised Steele that, as a licensed attorney, he was precluded from assisting Steele in activities which constituted the unauthorized practice of law.

¶5    Steele had represented numerous clients in administrative hearings during his career as a CPA and had been involved in hearings where other nonattorneys had represented clients.  After McGregor raised the issue, Steele discussed his representation of Log Homes at the upcoming substantive hearing with three DOL hearing examiners, including Joseph Maronick (Maronick).  All three advised that the DOL routinely permits CPAs to represent clients at DOL hearings.

¶6    In the meantime, Log Homes' unemployment insurance tax case was transferred to hearing examiner Maronick.  McGregor moved to preclude Steele from representing any party to the contested case proceeding because Steele was not an attorney and Maronick granted the motion.  Nancy Neville, who is not an attorney, subsequently represented Log Homes at the hearing.

¶7    Steele filed his civil rights action for damages under § 1983 in the Fourth Judicial District Court, Missoula County, in May of 1996.  He contended therein that the actions of Maronick and McGregor (collectively, the Named Defendants) violated his rights to due process, equal protection and

free speech.  Steele also asserted that the Named Defendants, together with six unnamed members of the State Bar (Unnamed Members), conspired to deprive him of his constitutional rights for unspecified personal gain and to retaliate against him for his political views.  The Unnamed Members were never named or served.

¶8    The Named Defendants moved to dismiss Steele's complaint for failure to state a claim upon which relief could be granted and for a change of venue.  Venue was changed to the First Judicial District Court, Lewis and Clark County.  The District Court granted the Named Defendants' motion to dismiss for failure to state a claim, concluding that Steele did not allege the violation of a federally protected right which could provide the basis for a § 1983 action, and dismissed Steele's complaint accordingly.  Steele appeals.

STANDARD OF REVIEW

¶9   "Rule 12(b)(6), M.R.Civ.P., motions to dismiss are viewed with disfavor and a complaint should be dismissed only if the allegations in the complaint clearly demonstrate that the plaintiff does not have a claim." Kleinhesselink v. Chevron, U.S.A. (1996), 277 Mont. 158, 161, 920 P.2d 108, 110 (citations omitted).  In considering a motion to dismiss, "the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true."  Hollister v. Forsythe (1996), 277 Mont. 23, 26, 918 P.2d 665, 667 (citations omitted).

¶10  The District Court's determination that Steele's complaint failed to state a claim upon which relief can be granted is a conclusion of law.  See Hollister, 918 P.2d at 667.  We review a district court's conclusion of law to determine whether the interpretation of the law is correct.  Hollister, 918 P.2d at 667 (citation omitted).

DISCUSSION

¶11  Are Maronick and McGregor entitled to judicial or quasi-judicial immunity?

¶12  Steele contends on appeal that the District Court erred in dismissing his complaint because the complaint alleged the violation by Maronick and McGregor of three federally protected rights--due process, equal protection and free speech--and, therefore, properly stated claims under § 1983.  The Named Defendants contend, on the other hand, that the District Court's dismissal should be affirmed without regard to whether Steele's complaint sufficiently alleges the violation of a federally protected right because they are entitled to absolute judicial or quasi-judicial immunity.  They advanced these immunities in the District Court but that court dismissed on the grounds set forth above and did not reach the immunity issues.

¶13    For the reasons discussed below, we conclude that Maronick and McGregor are entitled to absolute judicial and quasi-judicial immunity, respectively, from Steele's § 1983 action for damages.  Since absolute immunity is a complete bar to Steele's action, this issue is dispositive without regard to the technical sufficiency of Steele's allegations to state a § 1983

claim. As a result, because the issue was timely raised in the District Court and provides a proper basis for affirming the result reached by the District Court (see State v. Parker, 1998 MT 6, ¶ 20, ___ P.2d ___, ___, 55 St.Rep. 16, 19, ¶ 20 (citation omitted)), we need not address Steele's assertions of error.

¶14 We begin by observing that federal immunity principles apply in § 1983 actions. In analyzing immunity in the context of a violation of federal constitutional rights, the Supreme Court has stated that "[t]o create a system in which the Bill of Rights monitors more closely the conduct of state officials than it does that of federal officials is to stand the constitutional design on its head." Butz v. Economou (1978), 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895, 914. Therefore, no distinction should be made for immunity purposes between a suit brought against a state official under 1983 and a suit against a federal official brought directly under the Constitution. Butz, 438 U.S. at 504.

¶15 In addressing immunity questions, the Supreme Court applies a functional approach. Forrester v. White (1988), 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555, 563. This approach examines the nature of the functions with which a particular official or class of officials has been lawfully entrusted, seeking to evaluate the "effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." Forrester, 484 U.S. at 224.

a. Judicial Immunity

¶16 Judicial immunity provides judges with absolute immunity from suit for civil damages for acts performed in their judicial capacities. Dellenbach v. Letsinger (7th Cir. 1989), 889 F.2d 755, 758. Judges are immune due to the nature of their responsibilities rather than their location in the government. Butz, 438 U.S. at 511. This immunity results from the independence judges need to make decisions in matters involving such things as monetary and liberty interests without fear of reprisal from dissatisfied litigants. See Butz, 438 U.S. at 509. Moreover, "[t]he essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." Mitchell v. Forsyth (1985), 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 424 (citations omitted). Simply stated, absolute immunity is immunity from suit rather than a mere defense to liability. Dellenbach, 889 F.2d at 758 (citation omitted).

¶17 In Butz, the United States Department of Agriculture (the Department) issued an administrative complaint against a corporation which was a registered commodity futures commission merchant. The complaint alleged that the corporation had failed to satisfy the minimum financial requirements established by the Department and sought to revoke or suspend the corporation's registration. Butz, 438 U.S. at 481. After additional investigation, an amended complaint was issued and a hearing was held before the Department's chief hearing officer, who recommended sustaining the complaint. Butz, 438 U.S. at 481. The corporation subsequently filed a § 1983 suit in federal district court naming the chief hearing officer and others involved in the investigation, issuance, and review of the complaint as

defendants.  Butz, 438 U.S. at 481-82.

¶18    The Supreme Court observed that the "conflicts which federal hearing examiners seek to resolve are every bit as fractious as those which come to court[,]" often resulting in post-adjudication disappointment and associated venting by the losing party similar to those which follow adverse judicial determinations.  Butz, 438 U.S. at 513 (citation omitted).  It also observed that federal administrative law provides many of the same safeguards as are available in the judicial process, such as the adversarial nature of the proceedings, the insulation of the trier of fact from political influence, and the requirement that each party have the opportunity to present oral and documentary evidence.  Butz, 438 U.S. at 513 (citations omitted).  Moreover, the Supreme Court noted that both the role and the powers of a modern federal hearing examiner--to rule on motions, issue subpoenas, regulate the course of the proceeding and make decisions via findings of fact and conclusions of law--are functionally comparable to those of a judge.  Butz, 438 U.S. at 513 (citation omitted).  For those reasons, the Supreme Court ultimately held that federal hearing examiners performing agency adjudicatory functions are entitled to absolute immunity from liability for damages for their judicial acts. Butz, 438 U.S. at 514.

¶19    The Supreme Court's reasoning in Butz is equally appropriate in the present case involving DOL hearing examiner Maronick.  The proceedings before state hearing examiners are adversarial in nature.  See § 2-4-102(4), MCA.  In addition, state hearing examiners generally have the power to issue subpoenas, regulate the course of hearings, and provide for the taking of depositions.  Section 2-4-611(3), MCA.  They also have the authority to render or recommend decisions and must issue findings of fact and conclusions of law in support of their decisions.  See §§ 2-4-611, 2-4-614(1)(f), and 2-4-623, MCA; see also §§ 39-51-2402 and 39-51-2403, MCA.  Furthermore, the DOL's hearing examiners or appeals referees must be impartial, salaried employees.  Section 39-51-305, MCA.  We conclude, therefore, that the DOL's hearing examiners perform adjudicatory functions comparable to those performed by judges under similar safeguards.  As a result, we further conclude that those hearing examiners are entitled to absolute judicial immunity when acting in their adjudicatory capacities.  The question remains whether Maronick was acting in an adjudicatory capacity when he ruled on McGregor's motion to preclude Steele from representing Log Homes in the contested administrative hearing.

¶20    It cannot be disputed that ruling on a motion in a proceeding to adjudicate legal rights and liabilities is a judicial function whether it is performed by a judge in court or a hearing examiner in a contested administrative proceeding.  Nor can it be disputed that Maronick's act of ruling on a pending motion was within the authority granted him under § 2-4-611(3), MCA, to regulate the course of the proceedings before him.  That Maronick enforced § 37-61-201, MCA, against Steele, but not against other CPAs, does not change the fundamental judicial nature of Maronick's action in ruling on McGregor's motion.  Judicial immunity "is dependent on the challenged conduct being an official judicial act within [the judge's] statutory

jurisdiction, broadly construed." Dennis v. Sparks (1980), 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185, 190 (citations omitted). It is not dependent on acting correctly. Indeed, a person acting in a judicial capacity will not be deprived of immunity because he or she acted maliciously, mistakenly, or in excess of authority. See Stump v. Sparkman (1978), 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331, 339 (citation omitted).

¶21 Steele argues, however, that Maronick's action of precluding him from representing clients was a legislative, rather than a judicial, action and, as a result, that Maronick is not entitled to judicial immunity. He relies on Supreme Court of Va. v. Consumers Union (1980), 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641, but his reliance is misplaced.

¶22 In Consumers Union, the Supreme Court addressed whether the Virginia Supreme Court (Virginia Court) and its chief justice were immune from suit in a § 1983 action "challenging the Virginia Court's disciplinary rules governing the conduct of attorneys. . . ." Consumers Union, 446 U.S. at 721. The Supreme Court concluded, inter alia, that judicial immunity was not available because the attorney disciplinary rules were propounded in the Virginia Court's legislative--rather than adjudicative--capacity. Consumers Union, 446 U.S. at 731.

¶23 Here, Maronick was not promulgating, or attempting to promulgate, attorney disciplinary rules when he ruled on McGregor's motion to preclude. Those rules have been promulgated by this Court. Maronick was simply ruling on the merits of a pending motion as a matter of law and, as discussed above, ruling on a motion is a judicial function. Thus, the Consumers Union conclusion on which Steele relies has no application in the present case.

¶24 We hold that Maronick is entitled to absolute judicial immunity from suit for civil damages for the act of ruling on McGregor's motion to preclude Steele from representing Log Homes.
    b.   Quasi-judicial Immunity

¶25 The doctrine of immunity evolved to protect not only judges, but also certain participants in the judicial process whose functions are closely associated with those of judicial officers. See Butz, 438 U.S. at 509-10. Indeed, grand jurors and prosecutors have been extended absolute immunity as "quasi-judicial officers" because their judgments are functionally comparable to those made by judges. The immunity they receive is termed quasi-judicial immunity. Butz, 438 U.S. at 512 (citation omitted).

¶26 Quasi-judicial immunity is the same absolute immunity from suit as judicial immunity; it is not a mere defense to liability. Dellenbach, 889 F.2d at 758 (citation omitted). Like judicial immunity, quasi-judicial immunity benefits the public--not the person being sued--by ensuring that quasi-judicial officers exercise their functions unfettered by fear of legal consequences; also like judicial immunity, quasi-judicial immunity extends only to acts within the scope of the actor's jurisdiction and with the authorization of law. See Turner v. American Bar Ass'n (N.D. Tex. 1975), 407 F.Supp. 451, 482 (citation

omitted).  To be protected by quasi-judicial immunity, the person asserting the immunity must have acted in a quasi-judicial capacity.  See Anderson v. Boyd (9th Cir. 1983), 714 F.2d 906, 909.

¶27  The Named Defendants assert that DOL attorney McGregor is an officer of the court who merely discharged his duty under the Montana Rules of Professional Conduct in notifying the hearing examiner that Steele was practicing law without a license.  As a result, they argue that McGregor is entitled to absolute quasi-judicial immunity.  We agree.

¶28  Article VII, Section 2(3) of the Montana Constitution expressly authorizes this Court to make rules governing the conduct of attorneys in this state.  Indeed, we have interpreted that provision as vesting this Court with the exclusive authority to make such rules regulating attorneys, who are officers of the court.  Harlen v. City of Helena (1984), 208 Mont. 45, 49-50, 676 P.2d 191, 193 (citations omitted).  We exercised that constitutional authority by issuing our Order Adopting Rules of Professional Conduct in Cause No. 84-303 on June 6, 1985.  Our order specifically made the Montana Rules of Professional Conduct (M.R.Prof'l Conduct) applicable to all members of the State Bar, which includes all persons admitted to the practice of law in Montana.  See In re Unified Bar of Montana (1975), 165 Mont. 1, 2-3, 530 P.2d 765, 765.

¶29  Rule 5.5(b), M.R.Prof'l Conduct, prohibits an attorney from assisting "a person who is not a member the bar in the performance of activity that constitutes the unauthorized practice of law."  McGregor is an attorney subject to the Rules of Professional Conduct.  It was McGregor's opinion that Steele's representation of Log Homes at the DOL hearing would  constitute the practice of law by Steele, who is not an attorney.  Thus, as McGregor saw it, such representation by Steele would constitute the "unauthorized practice of law" as that phrase is used in Rule 5.5(b), M.R.Prof'l Conduct.

¶30  Under these circumstances, attorney McGregor was required by Rule 5.5(b) to refrain from assisting Steele in what McGregor perceived to be the unauthorized practice of law.  He met that court-ordered obligation by moving to preclude Steele's representation of Log Homes.  His motion was within his jurisdiction as a lawyer and authorized by our order promulgating the conduct rules and, specifically, by Rule 5.5(b), M.R.Prof'l Conduct.  We conclude that McGregor was acting as an officer of the court when he moved to preclude Steele from representing Log Homes and, therefore, that his motion was a quasi-judicial act carrying out this Court's order and directives in an area within our exclusive purview.  To conclude otherwise would produce the anomalous and untenable result of subjecting an attorney acting in direct response to an order of this Court to legal consequences.  We hold, therefore, that McGregor is entitled to absolute quasi-judicial immunity from suit for civil damages for his action in moving to preclude Steele from representing clients in DOL proceedings.

¶31  Because Maronick and McGregor are entitled to judicial and quasi-judicial immunity, respectively, we hold that the District Court did not err in

dismissing Steele's complaint for failure to state a claim upon which relief could be granted.

¶32 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ WILLIAM E. HUNT, SR.
/S/ JIM REGNIER

Justice Terry N. Trieweiler specially concurring.

¶33 I concur with the majority's conclusion that defendant Joseph V. Maronick is entitled to judicial immunity from liability for the acts complained of by the plaintiff, Robert G. Steele. However, I disagree that judicial or quasi-judicial immunity applies to defendant Daniel P. McGregor who was merely a state attorney acting in a non-judicial, adversarial capacity when he moved to have Robert B. Steele disqualified from representing Neville Log Homes.

¶34 I do, however, specially concur with the result of the majority opinion. I conclude that McGregor was entitled to qualified immunity pursuant to Harlow v. Fitzgerald (1982), 457 U.S. 800. In this case, based on rules of this Court pertaining to unauthorized practice of law, and based on advice from the Commission on the Unauthorized Practice of Law, McGregor could reasonably assume there was an ethical basis for challenging Steele's representation, even though other non-lawyers had been permitted to represent clients in the same proceedings in the past. Pursuant to Harlow, government employees are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. I conclude that the allegations in this case are insufficient under the circumstances in this case to establish that McGregor violated clearly established statutory or constitutional rights about which a reasonable person would have known.

¶35 For these reasons, I would affirm the judgment of the District Court, and specially concur with the majority opinion.

/S/ TERRY N. TRIEWEILER