FILED

June 2 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0523

DA 14-0523

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 150

SHANNON AMOUR,

      Plaintiff and Appellant,

    v.

COLLECTION PROFESSIONALS,
INCORPORATED, and NANCY SMITH
dba CHOICES FOR CHANGE COUNSELING,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Mineral, Cause No. DV 12-24
Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Terry A. Wallace, Attorney at Law, Missoula, Montana

      For Appellees:

      Matthew L. Erekson, Collection Professionals, Inc., Missoula, Montana

      Elizabeth W. Lund, Moore, O'Connell & Refling, P.C., Bozeman,
Montana (for Nancy Smith, dba Choices for Change Counseling)

Submitted on Briefs:  April 8, 2015
Decided:  June 2, 2015

Filed:

                             Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Shannon Amour sued Collection Professionals, Inc. (CPI) and Nancy Smith after CPI sought to collect Amour's bill for Smith's services as guardian ad litem (GAL) during Amour's marriage dissolution proceedings. The Fourth Judicial District Court, Mineral County, entered summary judgment in favor of CPI and Smith. Amour appeals. The dispositive issues on appeal are:

> *1. Whether the District Court correctly awarded summary judgment to CPI on Amour's Fair Debt Collection Practices Act claim because CPI was not attempting to collect a debt regulated by that statute.*
>
> *2. Whether the District Court correctly awarded summary judgment to Smith.*
>
> *3. Whether the District Court correctly awarded CPI $7,408.70 in damages plus interest.*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In 2007, Amour filed for dissolution of her marriage. On January 24, 2008, the court handling the action entered an order naming Smith as GAL for Amour's children during the pendency of the dissolution proceedings. The order specified Smith's duties, granted Smith judicial immunity, and specified that the gross marital estate was responsible for paying Smith for her work.

¶4 On February 4, 2008, Amour entered a contract with Smith specifying that Smith would be paid $90 per hour for her work, plus expenses. Smith billed Amour half the account and billed Amour's ex-husband the other half. Amour paid some of the bills but stopped paying in May 2010. In November 2011, Smith assigned $6,975.60 in unpaid

2

bills to CPI, which then notified Amour that she owed $7,511.74, including interest. On January 20, 2012, the dissolution court entered an order stating that the "individual debts to the GAL are solely the responsibility of the individuals and are not a debt of the marital estate," and that the "Parties' individual debts including . . . their individual debt to the GAL are the responsibility of each party individually."

¶5 In March 2012, CPI filed a complaint in justice court to collect the debt. Amour filed a counterclaim exceeding the justice court's jurisdictional limit and the case was dismissed. Amour then filed a complaint in the District Court alleging that CPI violated the Fair Debt Collection Practices Act (FDCPA) through attempting to collect a false debt; that Smith committed defamation by falsely publishing to third parties that Amour owed a debt; and that Smith violated the Montana Consumer Protection Act through her actions. CPI counterclaimed for the amount owed for Smith's services under theories of breach of contract and breach of a court order. Later that year, CPI and Smith filed motions for summary judgment.

¶6 In November 2013, the District Court awarded Smith summary judgment in full and CPI summary judgment in part, reserving the issue of the amount of damages due to CPI for Amour's failure to pay her account. In July 2014, the District Court entered judgment in favor of CPI in the amount of $7,408.70 in principal plus interest from the date of Smith's assignment of the account to CPI. Amour appeals the District Court's entries of summary judgment in favor of CPI and Smith.

**STANDARD OF REVIEW**

¶7     We review summary judgment orders de novo. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704. Summary judgment is appropriate when the moving party demonstrates an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Albert*, ¶ 15. After the moving party meets its initial burden to show the absence of a genuine issue of fact and entitlement to judgment, the burden shifts to the party opposing summary judgment either to show a triable issue or to show why the undisputed facts do not entitle the moving party to judgment. *Phelps v. Frampton*, 2007 MT 263, ¶ 16, 339 Mont. 300, 170 P.3d 474.

**DISCUSSION**

¶8     *1. Whether the District Court correctly awarded summary judgment to CPI on Amour's FDCPA claim because CPI was not attempting to collect a debt regulated by that statute.*

¶9     The FDCPA regulates the collection of debts, but only the collection of those debts that fall under the terms of the statute. *Hawthorne v. Mac Adjustment*, 140 F.3d 1367, 1371 (11th Cir. 1998) ("By the plain terms of the statute, not all obligations to pay are considered 'debts' subject to the FDCPA."). The FDCPA defines "debt" as "[A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services, which are the subject of the transaction, are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). A "transaction"

4

under the FDCPA must be a consensual arrangement. *Hawthorne*, 140 F.3d at 1371. Thus, "[w]hen determining whether an obligation is a 'debt' under the statute, courts focus on whether it arose from a consensual consumer transaction for goods or services." *Omran v. Beach Forest Subdivision Ass'n, Inc.*, No. 12-10116, 2012 U.S. Dist. LEXIS 66277, at *7 (E.D. Mich.) (concluding that fines for breaking subdivision deed restrictions are not debts under the FDCPA); *see Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011) (per curium) (concluding that the FDCPA does not apply to efforts to collect city real estate fines); *Hicken v. Arnold, Anderson & Dove, P.L.L.P.*, 137 F. Supp. 2d 1141, 1143 (D. Minn. 2001) (concluding that a debt arising out of a marital settlement agreement does not fall within the FDCPA).

¶10 CPI asserts, and the District Court concluded, that Amour's debt to Smith did not arise out of a consensual transaction. Amour contests this conclusion, arguing that her debt to Smith arose out of the contract that Amour and Smith entered into in February 2008 specifying the amount that Amour would pay Smith for her services. Amour fails to recognize, however, that the February 2008 contract followed the dissolution court's January 2008 order appointing Smith as GAL and directing that the marital estate would be responsible for paying Smith for her services. In its January 2012 order, the court then assigned half that debt to Amour personally. With or without the contract between Amour and Smith, Amour still would have been under court order for Smith's services. Indeed, in response to a request for admission, Amour stated that her contract with Smith was "a document I was ordered to sign" by the dissolution court. Amour also stated in

her complaint that the dissolution court ordered Smith appointed as GAL, and that Amour "did not want the services of Smith and did not request them." Under these circumstances, it is clear that Amour's debt to Smith did not arise out of a consensual transaction and therefore that the FDCPA does not apply.

¶11 Amour also argues that CPI effectively admitted that the FDCPA regulates its debt collection efforts by sending Amour a letter referring to Amour's account as a "debt." But the question is not whether Amour was indebted to Smith; the question is whether the debt is the type of debt that the FDCPA regulates. It is not, because the debt did not arise out of a consensual transaction.

¶12 The District Court correctly awarded CPI summary judgment on Amour's FDCPA claim.

¶13 *2. Whether the District Court correctly awarded summary judgment to Smith.*

¶14 The District Court granted summary judgment to Smith on Amour's state law claims on two grounds. First, the court determined that Amour failed to raise a genuine issue of material fact about those claims, and that, in the absence of such a dispute, Smith was entitled to judgment. Second, the court determined that Smith was due quasi-judicial immunity for her actions as GAL. Amour contests both of these determinations.

¶15 Amour alleged two claims against Smith: defamation and violation of the Montana Consumer Protection Act. The District Court held that, as a court-appointed GAL, Smith was entitled to absolute quasi-judicial immunity under § 2-9-112(2), MCA. That section provides in pertinent part that an "agent of the judiciary is immune from suit for damages

6

arising from the lawful discharge of an official duty associated with judicial actions of the court." We have extended immunity to participants in the judicial process when they are acting in a quasi-judicial capacity. *Steele v. McGregor*, 1998 MT 85, ¶¶ 25-30, 288 Mont. 238, 956 P.2d 1364.

> Like judicial immunity, quasi-judicial immunity benefits the public—not the person being sued—by ensuring that quasi-judicial officers exercise their functions unfettered by fear of legal consequences; also like judicial immunity, quasi-judicial immunity extends only to acts within the scope of the actor's jurisdiction and with the authorization of law.

*Steele*, ¶ 26. Though we have not addressed the application of quasi-judicial immunity to a GAL, other courts have determined that GALs are entitled to absolute quasi-judicial immunity. *See Surprenant v. Mulcrone*, 44 A.3d 465, 468 (N.H. 2012) ("Absolute judicial immunity attaches when a GAL performs certain delegated duties because of the intimate relationship between the GAL and the court in the judicial process.") (quoting *Marr v. Me. Dept. of Human Servs.*, 215 F. Supp. 2d 261, 268 (D. Me. 2002)). Courts recognize that judicial immunity protects against harassment by disgruntled parents and ensures the GAL's independence. *See Carrubba v. Moskowitz*, 877 A.2d 773, 784 (Conn. 2005). "A guardian must be free, in furtherance of the goal for which the appointment was made, to engage in a vigorous and autonomous representation of the child." *Tindell v. Rogosheske*, 428 N.W.2d 386, 387 (Minn. 1988).

¶16 The District Court's January 24, 2008 order appointing Smith as GAL explicitly stated that she was an "agent" of the court "and as such is granted judicial immunity." The statute authorizing appointment of a GAL in a parenting proceeding makes clear that

the GAL is an officer of the court, tasked with conducting investigations, making reports and recommendations to the court, and performing other duties as the court directs. Section 40-4-205, MCA. Amour argues that Smith did not act as an agent of the court when she sent Amour a bill and sought to enforce collection. But the law requires the court to "enter an order for costs and fees in favor of the child's guardian ad litem," and directs the order to be made "against either or both parents." Section 40-4-205(4), MCA. Judicial immunity extends to the GAL's "performance of duties which are within the scope of such guardian's authority." *Billups v. Scott*, 571 N.W.2d 603, 607 (Neb. 1997). Smith's attempt to enforce collection of payment from Amour was within the scope of her authority as GAL. We agree with the District Court that she is protected by quasi-judicial immunity under § 2-9-112(2), MCA, from Amour's Montana Consumer Protection Act claim.

¶17 Under the circumstances of this case, we find it unnecessary to analyze whether judicial immunity would protect Smith from suit for Amour's defamation claim, which alleges an intentional tort. Truth is a complete defense against a defamation claim. *Citizens First Nat'l Bank of Wolf Point v. Moe Motor Co.*, 248 Mont. 495, 501, 813 P.2d 400, 404 (1991). Smith attached detailed billing statements with her motion for summary judgment. She also attached an affidavit attesting to the accuracy of those statements, to the duties she performed as GAL, and to the fact that Amour never disputed Smith's services or disputed that she was required to pay for those services until the current litigation. Through this evidence, Smith met her "initial burden" of establishing the

8

absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Phelps*, ¶ 16.

¶18 The burden accordingly shifted to Amour to respond with evidence showing a triable issue on her defamation claim. *Phelps*, ¶ 16. Amour responded with interrogatory responses that explained the basis for her claim that Smith misstated Amour's debt and acted unfairly and deceptively. But these interrogatory responses were not signed. M. R. Civ. P. 33(b)(5) requires that interrogatory responses be signed. "[A] party opposing a motion for summary judgment may not rest upon his pleadings but has an affirmative duty to bring forth *sworn* testimony or affidavits [that] show a genuine issue." *Wright v. State*, 231 Mont. 324, 327, 752 P.2d 748, 750 (1988) (emphasis added). We require "strict compliance" with M. R. Civ. P. 56's evidentiary requirements. *Smith v. Burlington N. & Santa Fe. Ry. Co.*, 2008 MT 225, ¶ 41, 344 Mont. 278, 187 P.3d 639. Courts do not consider unsworn or unsigned evidence at the summary judgment stage. *See Alfson v. Allstate Prop. & Cas. Ins. Co.*, 2013 MT 326, ¶¶ 11-13, 372 Mont. 363, 313 P.3d 107; *Silver v. Foster Wheeler LLC*, No. 2:11-CV-64218-ER, 2012 U.S. Dist. LEXIS 29076, at *9-10 (E.D. Pa. Jan. 25, 2012); *Overton v. City of Harvey*, 29 F. Supp. 2d 894, 901 (N.D. Ill. 1998). There was no evidence in the record that the District Court appropriately could consider that raised a triable issue on Amour's defamation claim. The District Court therefore acted correctly in concluding that Smith was entitled to judgment.

9

¶19 On appeal, Amour admits that her interrogatory responses were not signed, but argues that she corrected that mistake by later submitting signed versions of those responses. By that time, however, the District Court already had granted Smith summary judgment. A court "need not consider untimely filed documents in proceedings for summary judgment." *Wright*, 231 Mont. at 327, 752 P.2d at 750. Further, Amour challenged the performance of Smith's duties as GAL for the first time after being sued for collection of the debt. The proper time to raise those challenges was in the underlying dissolution proceedings. Amour failed to present substantial evidence essential to her claims. *See Smith*, ¶ 55.

¶20 The District Court correctly awarded summary judgment to Smith.

¶21 *3. Whether the District Court correctly awarded CPI $7,408.70 in damages plus interest.*

¶22 In its November 2013 summary judgment order, the District Court, mindful that CPI and Smith had provided several different figures for the amount of debt that Amour owed, reserved the issue of the amount of damages due to CPI. A few months later, CPI moved for summary judgment on the amount of damages, attaching an affidavit from Smith stating that the amount owed was $7,408.70, and including billing statements accounting for that figure. The District Court then entered judgment in CPI's favor in that number, plus interest, and appropriate costs.

¶23 On appeal, Amour argues that the District Court improperly resolved a factual dispute by determining that Amour owed $7,408.70 in principal. We disagree. CPI met its initial burden by submitting Smith's affidavit and billing statements showing that

10

$7,408.70 was due. The burden then shifted to Amour to identify evidence calling into question the accuracy of the amount billed. Amour instead submitted interrogatory responses that baldly alleged that Smith ran up charges without providing evidence to support that allegation. Additionally, the interrogatory responses attacked the competency with which Smith performed her actions as GAL, but Amour did not provide evidence that Smith did not in fact perform the actions that accounted for the debt of $7,408.70.

¶24 Amour also appeals the District Court's award of interest on the principal amount. However, § 27-1-211, MCA, states:

> Each person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover that is vested in the person upon a particular day is entitled also to recover interest on the damages from that day except during the time that the debtor is prevented by law or by the act of the creditor from the debt.

Section 27-1-211, MCA, has three requirements: (1) an underlying monetary obligation, (2) an amount of recovery that is certain or capable of being made certain by calculation, and (3) a right to recover that vests on a particular day. *LHC, Inc. v. Alvarez*, 2007 MT 123, ¶ 29, 337 Mont. 294, 160 P.3d 502. All three requirements are met in this case. The District Court determined that there is an underlying monetary obligation, and that the right to recover vested in CPI after Smith assigned her account to CPI in November 2011. All of the billed-for actions occurred before November 2011. Amour disputes the amount that CPI should recover, but "'the fact that a claim is disputed does not make it uncertain,' as long as the damage amount is reduced to certainty on a particular day."

11

*LHC*, ¶ 29 (quoting *Safeco Ins. Co v. Lovely Agency*, 215 Mont. 420, 425, 697 P.3d 1354, 1357 (1985)).

## CONCLUSION

¶25     The District Court's November 2013 summary judgment order and July 2014 judgment in favor of CPI are affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER