FILED

08/06/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0620

DA 24-0620

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 174

RODNEY OWEN SKURDAL,

        Plaintiff and Appellant,

  v.

JEANNE M. WALKER, and
YELLOWSTONE COUNTY,

        Defendants and Appellees.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DV 24-1002
                Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Rodney Owen Skurdal, Self-Represented, Pompeys Pillar, Montana

        For Appellees:

            Steven T. Williams, Deputy Yellowstone County Attorney, Billings,
            Montana

Submitted on Briefs:  February 26, 2025

Decided:  August 6, 2025

Filed:

                          _____
                                    Clerk

Chief Justice Cory Swanson delivered the Opinion of the Court.

¶1     Rodney Owen Skurdal sued Yellowstone County Justice of the Peace Jeanne Walker, after Judge Walker denied Skurdal's attempt to represent Ronald Trow in a criminal case. Skurdal is not an attorney. The Thirteenth District Court for Yellowstone County dismissed Skurdal's case, holding Judge Walker was immune from suit. Skurdal now appeals the dismissal to this Court. We affirm.

¶2     We restate the issues on appeal as follows:

> *Issue One: Whether Skurdal was improperly prevented from representing Trow by Justice of the Peace Walker.*
>
> *Issue Two: Whether Justice of the Peace Walker and Yellowstone County are entitled to absolute immunity from suit.*
>
> *Issue Three: Whether the District Court erred by dismissing the complaint without providing leave to amend the complaint.*

## FACTUAL AND PROCEDURAL BACKGROUND

### Trow's Proceedings

¶3     On March 19, 2024, Ronald Trow was stopped by a Montana Highway Patrol Trooper. The trooper requested a driver's license, proof of insurance, and proof of registration. Additionally, Trow appeared intoxicated, and the trooper conducted a Driving Under the Influence investigation. The trooper arrested Trow, and subsequently, the State charged Trow with five misdemeanor offenses: (1) failure to carry registration, (2) failure to signal intention to turn within 100 feet of a turn, (3) operating a vehicle without insurance, (4) driving a motor vehicle with a revoked or suspended license (first offense), and (5) aggravated driving under the influence of alcohol and or drugs (third offense). Two

2

proceedings resulted out of this alleged crime in the Yellowstone County Justice Court: a criminal proceeding against Trow, and a Trow civil suit against Anderson Towing.[1]

¶4 Trow filed the civil suit on April 9, 2024. The Justice Court found the complaint form was improperly completed. The form failed to list the sought-after damages, it did not contain any allegations against Anderson Towing, and there was no record of an attachment being submitted. Subsequently, during a hearing on May 14, the case was dismissed without prejudice. No complaint was refiled.

¶5 Concurrently, Trow's criminal proceeding continued. The initial appearance was scheduled for June 4, 2024. Around this time, Trow contacted Rodney Skurdal and asked Skurdal to represent him. Skurdal states he sought to represent Trow against Anderson Towing, but then referenced the June 4 proceeding, which was the initial appearance in the criminal case. Later in his opening brief, Skurdal claims he had a "verbal contract" to represent Trow in his "small claims court case." Both cases were held in front of Judge Walker. In its answer, and on appeal, the State highlights that the June 4 proceeding, which Skurdal challenges, was the initial appearance in the criminal case.

¶6 Skurdal is not a licensed attorney in the state of Montana or in any other state. When Skurdal began acting as Trow's attorney at the initial appearance, Judge Walker ordered Skurdal to vacate the defendant's table and then ordered the hearing to proceed without Skurdal. Trow entered a plea of not guilty on all counts. A public defender was appointed

---

[1] This Court takes judicial notice of two cases, *State v. Trow*, TK-910-2024-0001550 (Yellowstone Cnty. Just. Ct., filed Mar. 20, 2024) and *Trow v. Anderson Towing*, SM2024-0038 (Yellowstone Cnty. Just. Ct., filed Apr. 5, 2024)

to represent Trow. Since then, Trow failed to appear during his Omnibus hearing, his bond was forfeited, and a warrant for his arrest was issued. The criminal case is still pending as of this date.

**Skurdal's Proceedings**

¶7 After Trow's initial appearance, Skurdal filed his suit in the Thirteenth Judicial District Court for Yellowstone County against Judge Walker. Against Skurdal's wishes, Yellowstone County was added as a defendant as the financially liable party for any claim against the Justice Court.

¶8 Skurdal alleged Judge Walker violated his and Trow's rights when she did not allow Skurdal to represent Trow during the initial appearance. Additionally, Skurdal made allegations Trow's rights were violated throughout the prosecution of his case, and he advanced other arguments which could be characterized as "Sovereign Citizen" arguments. These arguments alleged Judge Walker lacked jurisdiction over Trow because Judge Walker did not maintain a bond, Walker was practicing admiralty law and not common law, and other similar allegations.[2] Skurdal attempted to overcome Judge Walker's judicial immunity by claiming she had no jurisdiction over Trow.

---

[2] In this case, Skurdal, using an incorrect definition of common law, argues statutory law cannot be common law. "The common law does not control where the law is declared by statute." *Phipps v. Old Republic Nat'l Title Ins. Co.*, 2021 MT 152, ¶ 20, 404 Mont. 336, 489 P.3d 507 (internal quotations omitted; ellipsis omitted; citation omitted). For a general discussion on Sovereign Citizen arguments, belief systems, and the movement's origin, *see* Caesar Kalinowski IV, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153 (2019).

4

¶9 The Defendants moved to dismiss the complaint. The District Court granted the Defendants' motion and dismissed the case with prejudice, holding Judge Walker and Yellowstone County were protected by immunity. This appeal follows.

**STANDARD OF REVIEW**

¶10 A complaint should be dismissed if the well-pleaded factual allegations, taken as true, fail to state a claim upon which relief can be granted. M. R. Civ. P. 12(b)(6); *accord Stokes v. State*, 2005 MT 42, ¶ 6, 326 Mont. 138, 107 P.3d 494. A district court's determination that a complaint fails to state a claim upon which relief can be granted is a conclusion of law that this Court reviews for correctness. *Stokes*, ¶ 6.

¶11 A district court's denial for leave to amend is reviewed for abuse of discretion. *Seamster v. Musselshell Cty. Sheriff's Office*, 2014 MT 84, ¶ 6, 374 Mont. 358, 321 P.3d 829.

**DISCUSSION**

¶12 *Issue One: Whether Skurdal was improperly prevented from representing Trow by Justice of the Peace Walker.*

¶13 The Sixth Amendment to the United States Constitution states a defendant has the right to "the Assistance of Counsel for his defence." U.S. Const. Amend. 6. But this right is not without limits. The United States Supreme Court noted, "[r]egardless of his persuasive powers, an advocate who is not a member of the bar may not represent clients

5

(other than himself) in court." *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 1697 (1988).

¶14 Additionally, the Montana Constitution guarantees a defendant the right to counsel. Mont. Const., art. II § 24. However, the Montana Constitution does not grant the right to be represented by a lay person in a criminal trial. "In Montana, a non-lawyer may not represent others." *Guill v. Guill*, 2014 MT 316, ¶ 19, 377 Mont. 216, 339 P.3d 81 (citing *Traders State Bank v. Mann*, 258 Mont. 226, 234, 852 P.2d 604, 609 (1993), *overruled on other grounds*, *Turner v. Mtn. Eng'g & Constr., Inc.*, 276 Mont. 55, 915 P.2d 799 (1996)).

¶15 Skurdal points to § 25-31-601(2), MCA, to argue "any person . . . may act as an attorney for a party." However, this section is part of the statutes governing *civil* procedure, not criminal procedure. These do not apply to criminal proceedings. Criminal proceedings are governed by Title 46 of the Montana Code Annotated. Section 46-1-103, MCA. Title 46, MCA, does not contain this "any person" exception.

¶16 This Court held the same in *Sparks v. Johnson*, where a criminal defendant argued § 25-31-601, MCA, allows for representation by non-licensed attorneys. *Sparks v. Johnson*, 252 Mont. 39, 42, 826 P.2d 928, 929 (1992). However, we concluded this section "is limited, by its plain language and placement in the Montana codes, to civil litigation in justices' courts." *Sparks*, 252 Mont. at 42, 826 P.2d at 929. Thus, Skurdal did not have the statutorily granted ability to represent Trow during his initial appearance.

¶17    *Issue Two: Whether Justice of the Peace Walker and Yellowstone County are entitled to absolute immunity from suit.*

¶18    This Court, as well as the United States Supreme Court, has long recognized absolute immunity of judges for their judicial acts. Judicial immunity has its origins in English Common Law. Randolph Block, *Stump v. Sparkman and the History of Judicial Immunity*, Duke L.J. 879, 881 (1980). The doctrine "originated, in medieval times, as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error." *Forrester v. White*, 484 U.S. 219, 225, 108 S. Ct. 538, 543 (1988). The doctrine was first articulated in the landmark case *Floyd v. Barker*, 77 Eng. Rep. 1305 (Star Chamber 1608). In *Floyd*, Judge Barker presided over the murder trial of William Price. *Floyd*, 77 Eng. Rep. at 1306. After a jury found Floyd guilty, questions arose over the trial and culminated into accusations of conspiracy. *Floyd*, 77 Eng. Rep. at 1305. Lord Coke concluded a "judge cannot be charged for conspiracy, for that which he did openly in Court as Judge . . . ." *Floyd*, 77 Eng. Rep. at 1306.

¶19    The United States Supreme Court first embraced judicial immunity in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1871). There, Bradley, the attorney who represented John Surratt for his role in the conspiracy to assassinate President Lincoln, filed a suit against the judge presiding over the trial after a dispute arose between the judge and the attorney. *Bradley*, 80 U.S. at 344. The Supreme Court explained judicial immunity was a "settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country." *Bradley*, 80 U.S. at 347. The Court concluded

maintaining judicial immunity from suit is necessary to protect the finality of judgments, discourage inappropriate collateral attacks, and protect judges from "vexatious litigation" prosecuted by disgruntled litigants. *Bradley*, 80 U.S. at 347–48. Thus, the Supreme Court held judges are immune for their judicial acts. *Bradley*, 80 U.S. at 347.

¶20 The state of Montana has also recognized the importance of judicial immunity in protecting judicial officers. Judicial immunity provides judges with absolute immunity from suit for civil damages for acts performed in their judicial capacities. *Steele v. McGregor*, 1998 MT 85, ¶ 16, 288 Mont. 238, 956 P.2d 1364. Judges are immune due to the nature of their responsibilities. *Steele*, ¶ 16. "This immunity results from the independence judges need to make decisions in matters involving such things as monetary and liberty interests without fear of reprisal from dissatisfied litigants." *Steele*, ¶ 16.

¶21 The Montana Legislature codified this immunity in § 2-9-112, MCA, stating "[a] member, officer, or agent of the judiciary is immune from suit for damages arising from the lawful discharge of an official duty associated with judicial actions of the court." Section 2-9-112(b), MCA. "Judges are not entitled to judicial immunity when their act (1) is not normally a function performed by a judge, [or] (2) the judge acts in the 'clear absence of all jurisdiction.'" *Hartsoe v. Tucker*, 2013 MT 256, ¶ 9, 371 Mont. 539, 309 P.3d 39 (citation omitted). In this case, we conclude Judge Walker acted in her judicial capacity during criminal proceedings within the jurisdiction of her court, and therefore she enjoys absolute judicial immunity from suit.

¶22 Judge Walker performed a judicial act when she ordered Skurdal to vacate the defendant's table and proceeded without him. An act is judicial when "it is a function

8

normally performed by a judge," and the parties "dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S. Ct. 1099, 1107 (1978); *see, e.g., Forrester v. White*, 484 U.S. at 230, 108 S. Ct. at 546 (a judge was not entitled to absolute immunity for actions in administrative capacity when he demoted and discharged a subordinate). "Every court has power to: (1) preserve and enforce order in its immediate presence; (2) enforce order in the proceedings before it . . . ; [and] (3) provide for the orderly conduct of proceedings before it . . . ." Section 3-1-111(1)–(3), MCA. By asking Skurdal to vacate the defendant's table, Judge Walker exercised her judicial power to preserve and enforce order in the proceedings before her.

¶23 Judge Walker also had jurisdiction over Trow's criminal case. Skurdal argues Judge Walker lacked jurisdiction because Trow was charged with Aggravated Driving Under Influence, Third Offense, punishable by up to a year in prison and $5,000 under § 61-8-1007(4), MCA. Skurdal points to § 3-10-303(1)(a), MCA, which states "The justices' courts have . . . jurisdiction of all misdemeanors punishable by a fine not exceeding $500 or imprisonment not exceeding 6 months, or both." Section 3-10-303(1)(a), MCA. But in his reading, Skurdal omits subsection (c), which also grants justice courts "concurrent jurisdiction with district courts of all misdemeanors punishable by a fine exceeding $500 or imprisonment exceeding 6 months, or both." Section 3-10-303(1)(c), MCA. These offences are sometimes referred to as high misdemeanors. *State v. Martz*, 2008 MT 382, ¶ 23 n.1, 347 Mont. 47, 196 P.3d 1239. "For the determination of the court's jurisdiction . . . , the offense shall be designated a felony or misdemeanor based upon the maximum potential sentence which could be imposed by

9

statute." Section 45-1-201, MCA. "'Misdemeanor' means an offense for which the sentence imposed upon conviction is imprisonment in the county jail for a term or a fine, or both, or for which the sentence imposed is imprisonment in a state prison for a term of 1 year or less." Section 45-2-101(42), MCA. Aggravated Driving Under the Influence, Third Offense, can result in a sentence over 6 months, but cannot exceed a year, making it a high misdemeanor. Justice courts have concurrent original jurisdiction over this offense.

¶24 Additionally, § 3-10-303(1), MCA, requires the offense be "committed within the respective counties in which the courts are established." It is not disputed Trow is alleged to have committed his DUI offense in Yellowstone County and was therefore within the jurisdiction of the Yellowstone County Justice Court. Thus, when Judge Walker determined Skurdal could not represent Trow because he was not a licensed attorney in the state of Montana, she was acting within her judicial capacity and had jurisdiction of the case.

¶25 Yellowstone County is also immune from suit. "The state and other governmental units are immune from suit for acts or omissions of the judiciary." Section 2-9-112(1), MCA. Counties are governmental units under the terms of this statute. *Mead v. McKittrick*, 223 Mont. 428, 431–32, 727 P.2d 517, 519 (1986). Judge Walker is a justice of the peace in Yellowstone County and a member of the judiciary of the state of Montana. *See* § 3-1-101, MCA. Yellowstone County is therefore immune from suit for Judge Walker's actions.

10

¶26　To overcome Judge Walker's immunity, Skurdal claims Judge Walker did not have jurisdiction over Trow. First, Skurdal alleges Montana judges did not take out bonds,[3] or insurance, and have not filed this bond with the appropriate office. Skurdal argues judges are required to do so under Title 2, chapter 9, MCA, Liability Exposure and Insurance Coverage. Specifically, § 2-9-602(1), MCA, requires "[a]ll state officers and employees shall be bonded." Skurdal argues Judge Walker was not "lawful[ly]" discharging her duties because she is not bonded and insured. He argues the lack of a bond makes all judges "impostors" impersonating public officials.

¶27　Skurdal looks to the incorrect statute. Judge Walker is a justice of the peace in the Yellowstone County Justice Court. Justice courts are county entities, not state entities, and their insurance requirement is governed by §§ 2-9-701 through –704, MCA. Under § 2-9-701(2), MCA, "a blanket bond may cover all officers and employees or any group of or combination of county officers and employees." Skurdal fails to show Yellowstone County does not have an insurance policy to cover all its officers and employees.

¶28　Nor do justices of the peace have to file bonds when assuming office. Under § 2-9-506(2), MCA, "[e]very official bond must be filed in the proper office within the time prescribed for filing the oath." Additionally, under § 2-16-501(9), MCA, an office becomes vacant upon "the incumbent's refusal or neglect to file the incumbent's official oath or bond within the time prescribed." However, § 2-9-501, MCA, specifically exempts "county, town, or township officers and state officers and employees" from the requirement

---

[3] The requirements for state, county, or city governmental units to maintain liability insurance are outlined under §§ 2-9-501 through –805, MCA.

11

to file a bond before assuming office. Judge Walker is a county officer. Therefore, she is not required to file a bond before she takes office.

¶29 Second, Skurdal argues Judge Walker, and other judges and justices in Montana, are declared, under § 2-9-601, MCA, to not be state officers. He argues they do not possess state offices and are "imposters." Skurdal claims the actions of every judge in Montana are "null and void" and Judge Walker did not have immunity because of this oversight by the Montana Legislature.

¶30 Skurdal misunderstands the statute. By stating "[a]s used in this part," § 2-9-601, MCA, specifically limits the meaning of the term "officer" to *that part*. Or explained simply, the term "officer" has a different definition in § 2-9-601, MCA, than in every other statute, where "officers" may include members of the judiciary.

¶31 Skurdal also complains about the use of his name in all capital letters in court documents. This appears to be based on the belief that for each person, there is a separate corporate "strawman" created at birth.[4] This entity is often identified by spelling the person's name in capital letters, and not in a specific format suggested by the Sovereign Citizen. According to this theory, if a person's name in a lawsuit is written in capital letters, the strawman is a party to the case, and the natural human of the same name is immune from suit. Skurdal appears to advance a version of this argument by embracing the "Rodney Owen Skurdal, sui juris" format for his name in court documents. Skurdal further claims the capital letters are a declaration of war by the courts on the American people and

---

[4] For an in-depth discussion on the name-split theory and its origins, *see* Kalinowski, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. at 158–165.

amount to treason.  He also claims Judge Walker's use of Trow's name in all capital letters in court proceedings was a sign of treason and therefore she was not lawfully discharging her official duties.

¶32    Federal and state courts have thoroughly and consistently rejected arguments contending capitalizing a person's name somehow affects the court's jurisdiction over that person.  "[T]he use of all capital letters in the indictment . . . is a purely formal typographical convention that does not affect any substantive rights."  *United States v. Rogers*, 16 F. App'x 38, 39 (2d Cir. 2001) (summary order); *see also United States v. Heijne*, 375 F. Supp. 2d 1229, 1231 (D.N.M., 2005) ("The usage [of block capital letters] is a typographical convention without legal significance."); *DeJesus v. Jeshke*, No. 02-C-1685, 2002 U.S. Dist. LEXIS 14826, at *1 (N.D. Ill. August 9, 2002) (explaining "the formatting of the words within a caption will not override the plain meaning of the words themselves."); *United States v. Sweet*, No. 8:01-CV-331-T-23TGW, 2001 WL 1346666, at *4 (M.D. Fla. Oct. 19, 2001) (finding the argument fails the "laughable" test); *United States v. Beaner*, No. CIV-04-4041, 2005 WL 1503217, at *3 (D.S.D. June 24, 2005) (finding the capital letter argument frivolous); *Law Offs. of Dean Malone, P.C. v. I.R.S.*, No. CIV.3:00CV0466H, 2000 WL 33152233, at *3 (N.D. Tex. Dec. 22, 2000) (same).

¶33    We follow our sister courts and hold the formatting of words in a caption does not change the plain meaning of the words themselves.  There is no merit to the argument that using all capital letters affects a court's jurisdiction or somehow invokes a strawman.  This Court will continue to maintain the same formatting.  Listing party names in all capital

letters is simply a convention to promote clarity and uniformity for case captions. Deviating from that standard to accommodate a conspiracy theory would create a disjointed system of citations and create issues in printing and publishing opinions. We will continue to list parties in case headings by their legal names, written in all capital letters.

¶34 We have reviewed Skurdal's remaining arguments and find them equally without merit and irrelevant to the issue of jurisdiction.

¶35 *Issue Three: Whether the District Court erred by dismissing the complaint without providing leave to amend the complaint.*

¶36 Under Rule 15 of the Montana Rules of Civil Procedure, a plaintiff can amend his complaint within 21 days of serving his complaint. M. R. Civ. P. 15(a)(1)(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." M. R. Civ. P. 15(a)(2). While the court must "freely give leave" to amend a complaint, the court is "justified in denying a motion for an apparent reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, futility of the amendment, etc." *Farmers Coop. Ass'n v. Amsden, LLC*, 2007 MT 286, ¶ 12, 339 Mont. 445, 171 P.3d 690.

¶37 Skurdal's complaint was dismissed due to Judge Walker's absolute immunity. "Absolute immunity is immunity from suit, rather than a mere defense to liability." *Steele*, ¶ 16. When a defendant is asserting immunity, a district court is obligated to address immunity before looking at any other issues. The purpose of this order of analysis is to

14

prevent a defendant from having to address the merits of a claim against him when he is immune. Afterall, what good would immunity be if the defendant still had to go through protracted litigation to invoke the immunity?

¶38 Because Judge Walker and Yellowstone County are immune from Judge Walker's judicial acts, any amendment to the complaint would be futile. The District Court had all the relevant information when it ruled on the merits of the immunity. The jurisdiction of a justice court is dependent only on (1) the location of the offense and (2) whether the crime is a misdemeanor or a felony. A judge enjoys absolute judicial immunity when (1) the act is a function normally performed by a judge, and (2) the judge does not act in the "clear absence of all jurisdiction." *Hartsoe*, ¶ 9. Skurdal could not overcome any of these elements through further amendments.

**CONCLUSION**

¶39 The District Court's order dismissing the case with prejudice is affirmed.

/S/ CORY J. SWANSON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE

Justice James Jeremiah Shea, concurring.

¶40 I concur fully with the Court's Opinion. The Opinion provides an excellent historical context of the need for judicial immunity. I write separately only for the limited purpose of noting that while determining whether an act is "normally a function performed

15

by a judge" will generally be straightforward—as it is in this case—there can be circumstances that require closer scrutiny in making that determination. Other jurisdictions have extended the protections of judicial immunity to situations I would submit are not supported by the historical necessity for the doctrine, nor would they be supported by the plain language of § 2-9-112, MCA, if the litigation was in Montana.

¶41 The most stark example of what I contend is an overextension of judicial immunity is the notorious "Kids for Cash" case, in which two Pennsylvania judges were caught sending unrepresented juvenile defendants to youth centers in exchange for $2.6 million in kickbacks. *Wallace v. Powell*, No. 3:09-cv-286, 2009 U.S. Dist. LEXIS 109163, at \*19 (M. D. Pa. Nov. 20, 2009). A number of the children brought suit against the judges and other parties involved in the scheme. The United States District Court for the Middle District of Pennsylvania determined that the judges were immune from suit for any actions they took in adjudicating the delinquency of the juveniles, no matter whether those decisions were "made corruptly or in a pre-determined fashion." *Wallace*, 2009 U.S. Dist. LEXIS 109163, at \*39. The court held judicial immunity to apply even though the judges had been indicted by a federal grand jury for the same conduct for which they were being sued.[1]

¶42 Whether or not the *Wallace* court reached the correct result under Pennsylvania law, I submit the same case in Montana may well have a different ending. As the Court correctly

---

[1] The court did hold that the judges could be held liable for signing agreements to send children to certain facilities, coercing probation officers to change their recommendations, and legislatively enacting a "zero-tolerance" policy not found in Pennsylvania law to justify their high referral rates. *Wallace*, 2009 U.S. Dist. LEXIS 109163, at \*41.

16

notes, our Legislature has codified judicial immunity to apply when the suit is for damages "arising from the *lawful* discharge of an official duty associated with judicial actions of the court." Section 2-9-112(2), MCA (emphasis added). The operative word there is "lawful." While the statute appropriately advances the public policy of "safeguard[ing] principals of independent decision making," *Hartsoe*, ¶ 5, it is not intended to act as a shield for intentional malfeasance.

¶43 To be clear, I am not advocating for the erosion of judicial immunity in Montana, I fully concur with the Court's analysis in this case, and I have no issue with previous decisions of this Court in which it applied judicial immunity. And it bears noting that I had to search outside the borders of Montana to find a good example of a case where, in my view, judicial immunity should *not* apply. But we live in a state that places such a high premium on government accountability, and the corresponding limitations on governmental immunity, that we have enshrined it in our Constitution. Mont. Const. art. II, Sec. 18. So whenever we use terms like "absolute immunity," I think it warrants clarifying that the word "absolute" comes with an asterisk.

/S/ JAMES JEREMIAH SHEA

Justice Ingrid Gustafson, specially concurring.

¶44 I concur in affirming the Justice Court's granting of Appellees' motion to dismiss for failure to state a viable claim. I do not believe this case warrants publication as application of clear, well-settled legal principles supports dismissal of Skurdal's complaint. In my opinion, the Opinion unnecessarily belabors clear, well-settled law. Instead of

17

issuing a superfluous 15-page Opinion, I would issue the following as a memorandum opinion:

> Appellant, Rodney Owen Skurdal, appeals from the September 24, 2024 Order Dismissing Complaint with Prejudice and the October 3, 2024 Judgment in favor of Appellees issued by the Thirteenth Judicial District Court, Yellowstone County. Appellant filed a pro se Complaint in which he asserted—in a very convoluted manner—that Justice Court Judge Jeanne Walker violated his rights when she refused to permit Skurdal to represent a friend in a criminal cause in Yellowstone County Justice Court, Cause No. TK-910-2024-0001550. Appellees filed a motion to dismiss asserting the complaint failed to state a viable cause of action. The District Court granted the motion to dismiss on September 24, 2024, and issued Judgment in Appellees' favor on October 3, 2024. Upon review of the record, we determine the District Court did not err in dismissing Appellant's complaint and issuing judgment in favor of Appellees. "[N]o representation can be made on behalf of a party by another person except an attorney duly licensed in the State of Montana." MURJCC 14(b). Skurdal is not a licensed attorney—nor does he assert he is— and, thus, has no right to represent a friend in a criminal cause, and as such has pled no viable claim.[1]

> We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

> Affirmed.

¶45 I would therefore affirm with the foregoing discussion.

/S/ INGRID GUSTAFSON

---

[1] While § 2-9-112, MCA, may arguably provide immunity to Judge Walker and Yellowstone County for the judicial acts of Judge Walker, we need not determine this issue as Skurdal has failed to plead a viable claim. Had the Opinion not gone so far afield creating and addressing non and poorly raised issues, there would also be no need for Justice Shea's concurrence. Many times, less is more.